### AYRES v. CONE et al.

#### (Circuit Court of Appeals, Eighth Circuit. May 1, 1905.)

#### No. 2,126.

1. BANKRUPTCY—OBJECTIONS TO ALLOWANCE OF CLAIM—RES JUDICATA.

Where the validity of the claim of a petitioning creditor in involuntary bankruptcy proceedings is put in issue by the bankrupt's answer, and the issue is heard upon evidence and determined in favor of the creditor, such adjudication is conclusive upon the bankrupt and all other creditors who, under the bankruptcy act, might have become parties to the proceeding, and, failing to do so, are to be considered as represented by the bankrupt; and the petitioning creditor's claim cannot again be contested when filed for allowance before the referee.

2. SAME—OBJECTIONS TO CLAIM BY OTHER CREDITORS—PROCEDURE.

Creditors of a bankrupt who desire to contest the allowance of the claim of another creditor, as they may do as parties in interest under Bankr. Act July 1, 1898, c. 541, § 57d, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443], must file objections in their own behalf, and cannot become parties to the issue merely by formally adopting objections filed by the bankrupt; nor have they any standing to contest such claim on an appeal taken from the decision of the District Court by the trustee in which they did not join.

Sanborn, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of South Dakota.

C. O. Bailey (J. H. Voorhees, J. W. Boyce, and R. H. Warren, on the brief), for appellant.

Hosmer H. Keith (Albert Keith, on the brief), for appellees.

Before SANBORN, Circuit Judge, and PHILIPS and RINER, District Judges.

RINER, District Judge. This was an appeal from an order made by the District Court for the District of South Dakota directing the referee in bankruptcy to allow a claim, the validity of which had been passed upon and allowed by the District Court in the proceedings wherein the appellant was adjudicated a bankrupt.

On the 3d of March, 1904, a petition in involuntary bankruptcy was filed by F. S. Cone and W. H. Dryden, copartners under the firm name of Cone & Dryden, A. S. Chambers, and A. R. Priest, against W. J. Gentle, in which it was alleged that Gentle owed debts to the amount of $1,000 and more, and that the petitioners were creditors of Gentle, having provable claims amounting in the aggregate, in excess of securities held by them, to $500 and more. The petition then averred that $500 of the sum claimed by Cone & Dryden to be due to them was for money loaned or advanced by them to Gentle, and that the sum of $5,361 was an indebtedness growing out of a real estate transaction between Cone & Dryden and Gentle, the petition setting out the facts in relation thereto. It was further averred that Gentle was insolvent, and had within four months next preceding the date of the filing of the petition committed an act of bankruptcy, in that, on the 13th day of January, 1904, he conveyed, transferred, concealed, and removed a stock of goods belonging to him, consisting of groceries, fixtures, book accounts, and other property, to one B. C. Mathews, who represented a portion of the creditors, and that Mathews took possession of the stock of goods, and was selling and disposing of the same for the purpose of paying a portion of the creditors of Gentle, with intent to prefer such creditors over other creditors. On the 11th of March, 1904, Gentle filed an answer to the petition in bankruptcy, in which he denied that he had committed the acts of bankruptcy alleged in the petition; denied that he was insolvent, and alleged that he should not be declared a bankrupt for any cause in the petition alleged; denied that he was indebted to Cone & Dryden, or either of them, in the sum of $500; denied all liability to Cone & Dryden by reason of the real estate transaction set out in the petition, because of certain other alleged transactions between Cone & Dryden and himself, which he sets out at length in his answer. To this answer the petitioning creditors filed a replication, and the matter came on for hearing before the District Judge upon the petition, answer, replication, and evidence, as shown by the stipulation of the parties found in the record, resulting in an order, entered on the 28th of March, declaring Gentle a bankrupt, and referring the matter to the referee to take such further proceedings therein as are required by the provisions of the bankruptcy act. Cone & Dryden presented their claims for the sum of $5,361 and for the sum of $500 to the referee for allowance. The allowance of each was objected to by the bankrupt, he filing written objections thereto, setting out substantially the matters theretofore averred in his answer to the petition. Four other creditors, not parties to the petition, attempted to join in the objections filed by the bankrupt to the allowance of these claims, by filing with the referee the following paper, indorsed "Objections":

"In the Matter of W. J. Gentle, Bankrupt. In Bankruptcy.

"The undersigned, creditors of the said W. J. Gentle, bankrupt, whose claims have been duly proved and allowed in said matter, do hereby unite

in the objections to the claim of F. S. Cone and W. H. Dryden, copartners under the firm name of Cone & Dryden, filed herein on the 2d day of May, 1904, and hereby adopt the objections of the said bankrupt, hereto attached.

> "Anthony Kelly & Co.,
> "Andrew Kuehn Co.,
> "Jewett Bros. & Jewett,
> "Manchester Biscuit Co.,
> > "By Bailey & Voorhees,
> > > "Their Attorneys."

The referee, after hearing argument upon the objections, held that the proceedings had in the District Court when Gentle was declared a bankrupt were not res judicata or conclusive upon him as to the validity of the claim of Cone & Dryden, and decided that he would hear further proof. As we understand the record, the referee did not reject the claim, neither did he allow it, but decided only that the proceedings in the District Court when Gentle was adjudicated a bankrupt were not conclusive upon him. This, we think, was the full extent of his ruling. From this finding, upon the petition of Cone & Dryden, the matter was certified to the District Judge by the referee, who, after argument, made the order here complained of.

This case presents the single question whether a petitioning creditor in an involuntary bankruptcy proceeding, whose claim has been adjudged valid by the court, on the application for an adjudication, in which proceedings its validity was in issue, can be required to establish it again before the referee at the suggestion of the bankrupt and other creditors, not parties to the petition. The District Court held that he could not, and in this conclusion we concur.

In the proceedings had before the District Court at the time the adjudication was made, the bankrupt appeared and answered, and in his answer not only put in issue the question of bankruptcy, but set out in detail the transactions out of which the alleged indebtedness of petitioners arose, and attempted to show that by reason of these and other transactions he owed no part of the claim for $5,361. Under the issues as framed by the parties, if his defense to this claim was good to the extent of one dollar, it was good as to the entire amount. The defense to the $500 claim of Cone & Dryden was based upon and in connection with the grocery business, which he alleged entered into the real estate transactions set out in the pleadings, and was by the answer made to depend upon the real estate transactions and the transfer of the stock of goods; hence, if the District Court had found that his defense to the $5,361 was good, it must necessarily have found that the defense to the $500 item was good, for, under the issues as made by the pleadings, the validity of both of these claims, necessarily united by reason of the incidents out of which they grew, was involved. In an adjudication in involuntary bankruptcy there is involved not only the question whether or not the petitioning creditors represent claims to the extent of $500 or upwards, but also the question whether or not the bankrupt owes debts to the extent of $1,000 or more. The answer in this case put in issue all of these questions. It is therein alleged:

"That practically the whole of the remaining indebtedness referred to in the petition herein as being the indebtedness of the said W. J. Gentle owing to other creditors not uniting in said petition is in truth and in fact the indebtedness of the said Cone & Dryden, incurred by the said W. J. Gentle as their agent in the operation and management of the said grocery store."

Under these issues, the court, in determining the question whether or not Gentle should be declared a bankrupt, necessarily had to determine whether or not the allegations of the answer were true. If they were true, then the indebtedness claimed by the petitioning creditors did not aggregate $500, and the bankrupt did not owe $1,000 provable in bankruptcy, for the debts thus alleged to have been created were in fact the debts of the petitioning creditors. The court, therefore, in making the adjudication, had to find that the bankrupt owed the petitioning creditors the sum of $5,361, for, as we have already seen under the issues, he owed the whole of it or he owed none of it.

It must be conceded, we think, that if there had been a judgment in the case reciting that, the issues herein coming on to be heard upon the pleadings and evidence, the court found that the defendant owed the petitioning creditors the sums of $5,361 and $500, the judgment thereon would have concluded the bankrupt as to the amount he owed the petitioning creditors. Gould v. Railway Co., 91 U. S. 526, 23 L. Ed. 416; Miller v. Covert, 1 Wend. 487; Roberts v. Heim, 27 Ala. 678; Robinson v. Howard, 5 Cal. 428; Aurora City v. West, 7 Wall. 99, 19 L. Ed. 42; Goodrich v. City of Chicago, 5 Wall. 573, 18 L. Ed. 511.

We do not think that the bankruptcy act contemplates that in a case where, upon issues involving the validity of the petitioning creditors' claim in the proceedings for an adjudication, the question has been fully heard and determined in favor of the validity of the claim, the bankrupt shall thereafter be allowed, when these same creditors present their claims for mere formal proof before the referee, to file the same answer and demand that the same issue shall again be tried before the referee and finally before the same judge who heard the application of the petitioning creditors for an adjudication, and this is precisely what is sought to be done in this case.

In In re Fallon, Fed. Cas. No. 4,628, Judge Blatchford said:

"So long as the adjudication of bankruptcy stands unrevoked, all inquiry as to the existence or validity of the debt claimed to be due to the petitioning creditor in the involuntary proceedings is precluded. The debt due to such creditor was established for the purpose of the adjudication, and neither the debt nor the adjudication can be attacked on a motion of this kind by a creditor who claims an adverse interest to the assignee in bankruptcy."

In In re Ulfelder Clothing Co. (D. C.) 98 Fed. 409, the identical question now before the court was passed upon by Judge De Haven. In that case the petitioning creditor alleged that the corporation was indebted to her in the sum of $2,000, evidenced by a promissory note. The answer, in addition to putting in issue the allegations of the petition in relation to insolvency, also contained a denial that the petitioner was a creditor of the corporation in any sum or amount whatever. The case there, as here, was heard upon the

issues made by the pleadings and upon evidence, and the court found the allegations of the petition to be true, entered an order of adjudication, and sent the case to a referee. The petitioning creditor presented her claim to the referee for allowance. Objection was made to the allowance of the claim, for the same reasons set up in the answer at the time the adjudication was made. The referee held that the validity of the claim could not be questioned either by the bankrupt or by any other creditor. In disposing of the case, Judge De Haven said:

"She was the petitioner in the proceeding to have the Henry Ulfelder Clothing Company adjudged bankrupt, and, the alleged fact having been put in issue by the answer to her petition, it was incumbent upon her to prove that she had a legal demand against that corporation for at least $500 in excess of securities held by her. Bankr. Act, July 1, 1898, c. 541, § 59, subd. 'b,' 30 Stat. 561 [U. S. Comp. St. 1901, p. 3445]. Without proof of this fact, the corporation and creditor who appeared in opposition to the petition for involuntary adjudication would have been entitled to a dismissal of the proceeding. In re Cornwall, 9 Blatchf. 114, Fed. Cas. No. 3,250; Bank v. Moore, 2 Bond, 170, Fed. Cas. No. 10,041; In re Skelley, 2 Biss. 260, Fed. Cas. No. 12,921. The question whether she was a creditor in that amount was therefore a material issue in that proceeding, and the decree therein undoubtedly establishes the fact that she was such creditor."

In that case the proof offered by the petitioning creditor before the referee and in the involuntary proceeding for an adjudication was a promissory note upon which she claimed the bankrupt was liable. It having been determined upon the proceedings for adjudication that the note was executed by the corporation and delivered upon a sufficient consideration, the court held that the same question could not be again drawn into controversy in the same bankruptcy proceeding in which the decree of adjudication was given. The learned judge said:

"The law certainly does not contemplate that the petitioning creditor shall be required to establish the validity of a particular claim against the bankrupt more than once in the same proceeding, unless the court shall, upon some legal ground, grant a new trial of such issue."

Under the bankruptcy act, any creditor may voluntarily appear and join in the petition or be heard in opposition thereto, and those not appearing are, we think, in contemplation of law, represented by the bankrupt to the extent of being concluded as to all matters directly in issue and determined by the order of adjudication.

In Candee v. Lord, 2 N. Y. 269, 51 Am. Dec. 294, it was argued that creditors, not parties to a suit affecting the title to the debtor's property, were not in privity with the debtor, and therefore not estopped by the judgment. The court, however, said:

"We think otherwise. The law which gave the judgment debtor the unlimited right (when honestly exercised) to contract debts, to settle and adjust their amount, to secure and to pay them, made him to that extent the representative of all his creditors who should seek the satisfaction of their demands out of his property. So far, at least, they are in privity with, and claim under, their debtor."

In our judgment, there is neither reason nor authority for the contention that an adjudication in bankruptcy made upon issues

such as are presented by the pleadings in this case, and, as the record shows, upon the evidence in support thereof, offered by the respective parties, does not conclude the bankrupt as to the facts therein involved and passed upon by the court. Neither do we think that there is any merit in the contention, made in this case, that other creditors sought to interpose at the hearing before the referee: First, because the creditors presented no objection; they simply said, "We adopt the answer of the bankrupt." The bankruptcy act makes no provision for such procedure. It authorizes any creditor to object to and contest the allowance of any claim, but he must file his own objections and make an issue. The act authorizes other creditors to join in a petition in involuntary bankruptcy, but they must enter a formal appearance, and then, by leave of court, may join by adopting the petition; but no such practice is authorized in respect to one creditor resisting the claim of another. Second, it is an all-sufficient answer that these creditors took no appeal from the action of the District Court. The appeal was taken by the trustee in bankruptcy, who resisted the allowance of the claim as the representative of the estate, and we think such intervening creditors ought not to be allowed to interpose and provoke a trial in their interest, and, after defeat, without incurring the risk of the costs of an appeal, to claim that they were represented by the trustee, and have the costs, if the appeal fails, taxed against the estate.

This record, we think, shows that the defense which the creditors proposed to make to the allowance of the petitioners' claim was a defense in favor of the bankrupt, which he had fully presented to the court, and which had been fully contested. In other words, the effort here is to have a new trial of the same issues between the petitioning creditors and the bankrupt. This, we think, cannot be done. The parties have had their day in court, and are not entitled to another.

We see no reason for disturbing the order made by the District Court, and it is therefore affirmed.

SANBORN, Circuit Judge (dissenting). A thoughtful consideration of the important question presented in this case has failed to bring my mind to yield assent to the conclusion of the majority that creditors who are not parties to the litigation upon a petition in bankruptcy are estopped by an adjudication thereon from subsequently contesting the allowance of the claim of the petitioning creditor and his right to share in the estate of the bankrupt when he proves and presents it for allowance to the referee and the court. The question arises in this way: On May 2, 1904, the appellees, Cone and Dryden, presented formal proof of their claim for $5,861 against the estate of Gentle, a bankrupt, of which the appellant, Ayres, was trustee. On May 7, 1904, Gentle filed objections to the allowance of this claim, which, if the allegations there made were true, disclosed the fact that this claim was false and fictitious. Four creditors of the bankrupt, whose claims had been proved and allowed, attached to the statement of these objections a writing

over their signatures, whereby they declared that they "do hereby unite in the objections, * * * and hereby adopt the objections of the said bankrupt hereto attached." The appellees objected by an answer to the introduction of any testimony to establish or to defeat their claim, upon the ground that in the trial of the issue whether or not Gentle was a bankrupt, to which the four objecting creditors were not parties, the validity of the claim of the appellees was adjudged. The referee overruled this objection, held that evidence upon the merits of the issue raised by the objections was admissible, and disallowed the claim. The District Court reversed this judgment of the referee and ordered him to allow the claim, upon the ground that both Gentle, who was a party to the proceeding for the adjudication, and the objecting creditors, who were not parties to it, were estopped by the adjudication in bankruptcy from insisting, as they did before the referee, that the claim of the appellees was unfounded. From this order of the District Court which allowed this claim, the trustee appealed.

In the opinion of the majority of the court this order should be affirmed: (1) Because the objecting creditors did not make another and separate statement of their objections, but adopted the written objections made by Gentle by a writing over their signatures; (2) because the trustee appealed from the order, and the objecting creditors did not; and (3) because the creditors and the trustee were estopped by the adjudication in bankruptcy from contesting the allowance of the claim of the appellees.

1. The objections of the four creditors to the allowance of the claim were the same as those presented by Gentle. There were no other objections. These creditors had the right to present and to secure an adjudication of these objections, because they were parties in interest in the allowance of the claim of the appellees. Sections 57d, 57f, Act July 1, 1898, c. 541, 30 Stat. 560 (U. S. Comp. St. 1901, p. 3443). If the statement of the objections had been written in duplicate, and one of the duplicates had been signed by Gentle and the other by the four creditors, or if the latter had copied Gentle's statement of the objections and had signed and filed that copy, their presentation of their objections must have been free from all criticism. For they certainly had the right to make the same objections which Gentle did. When the objections had been formulated, however, and signed by the attorney of Gentle, the four creditors added to them a writing over their signatures, whereby they declared that they united in and adopted the objections "hereto attached"; and this single instrument, which contains the statement of the objections, the signature of Gentle, and the written adoption of the objections "hereto attached" by the four creditors, was entitled "Objections," and filed with the referee and the court. Why were not these the objections of the four creditors as much as they were the objections of Gentle? A mere written statement over their signatures that they objected to the allowance of the claim upon the same grounds that Gentle presented would undoubtedly have amply made these objections on their behalf. The signature to objections is in any event but an

adoption of them, and the fact that one declares in writing that he does adopt them ought not to have less effect. Nor does one fail to adopt or to make any objection because others make or adopt the same. The adoption, filing, and presentation of the objections to the referee and the court were, in my opinion, as effective a making of objections by the four creditors as the filing and presentation of a separate paper which contained the same statement and the same objections over their signatures could have been.

2. The referee rejected the claim. The District Court reversed the order of rejection, and ordered the allowance of the claim. The trustee had the right, and it was his duty, if he believed this claim to be false and fictitious, to appeal from the order which allowed it, and the objecting creditors had no such right unless the trustee refused to take the appeal. Section 25a, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432; Chatfield v. O'Dwyer, 42 C. C. A. 30, 32, 101 Fed. 797, 799; Foreman v. Burleigh, 48 C. C. A. 376, 109 Fed. 313.

3. Did the adjudication of bankruptcy estop the objecting creditors and the trustee who represents them from contesting the allowance of the claim of the appellees and their right to share in the estate of the bankrupt? It is not material whether or not the adjudication estopped the bankrupt, and for that reason it is conceded that on March 28, 1904, when Gentle was adjudged a bankrupt, 25 days after the filing of the petition in bankruptcy, the issue whether or not he was indebted to the appellees in the sum of $5,861 became res adjudicata between the petitioning creditors and the bankrupt. The estoppel of that adjudication, however, did not arise until that day, which was 25 days after the rights of all creditors in the estate had become fixed, and it did not bind any one who was not a party to the litigation of the issues which that judgment determined.

Although the bankrupt was thus debarred from subsequently contesting the claim, the adjudication against him gave the owners of that claim no right to any share in his estate or to any dividend from its proceeds. Their right to that share and to that dividend was conditioned by the express terms of the bankruptcy act by a subsequent proof of their claim by a written statement under oath (section 57a) and by its allowance by the referee or by the court, and the trustee and other creditors were expressly granted the right to object to and to contest that allowance after the proof had been filed. (Sections 57c, 57k, 30 Stat. 560, 561 [U. S. Comp. St. 1901, pp. 3443, 3444]. Not only this, but the duty still rested upon the bankrupt to "examine the correctness of all proofs of claims filed against his estate" (section 7 [3], 30 Stat. 548 [U. S. Comp. St. 1901, p. 3425]), and, "in case of any person having to his knowledge proved a false claim against his estate, disclose that fact immediately to his trustee" (section 7 [7]), and the duty was imposed upon the trustee to defeat such a claim if possible. Chatfield v. O'Dwyer, 101 Fed. 797, 799, 42 C. C. A. 30, 32.

Identity of parties is as essential to an estoppel by res adjudicata as identity of causes of action. Fowler v. Stebbins, 136 Fed. 365 (decided at the last term). The objecting creditors were not named

138 F.—50

as defendants. They did not appear, answer, or take any part in the litigation which resulted in the adjudication of bankruptcy. Upon familiar principles, that litigation was therefore res inter alios acta as to them, and they were not bound by the determination of the issues which the parties might present in it, and which the bankruptcy act required to be litigated at another time and place. This rule is invoked and applied by the express provisions of that act that the creditors may exercise the option to appear in and be barred by the adjudication (section 18b–d, 30 Stat. 551 [U. S. Comp. St. 1901, p. 3429]), or to refrain from taking part in it and be free from it, and that they may object to and contest the allowance of claims of all other creditors, without exception (section 57d). Since no exception of the claims of petitioning creditors from this right of other creditors to contest them was made by the Congress, the conclusive legal presumption arises that it intended to make none, and it is not the province of the courts to do so. Webber v. St. Paul City Ry. Co., 38 C. C. A. 79, 82, 97 Fed. 140, 143; Madden v. Lancaster Co., 12 C. C. A. 566, 573, 65 Fed. 188, 195; McIver v. Ragan, 2 Wheat. 25, 29, 4 L. Ed. 175; Bank of State of Alabama v. Dalton, 9 How. 522, 528, 13 L. Ed. 242; Vance v. Vance, 108 U. S. 514, 521, 2 Sup. Ct. 854, 27 L. Ed. 808.

Moreover, the bankruptcy act has provided a time, a place, and a tribunal where all claims to share in the estate must be heard and allowed upon proofs of claims, and has given the right to all creditors to contest them there. From this provision the presumption necessarily arises that this time, place, and tribunal were to be exclusive, and that all creditors are relieved from the necessity of contesting claims to share in the estate at any other time or place. Petitioning creditors, like all others, are required to prove and secure an allowance of their claims in the face of the objections of other creditors, notwithstanding the adjudication of bankruptcy in their favor. The litigation upon their petition is not the time nor the place prescribed by the law for the trial of the question whether or not, or to what extent, their claims may share in the distribution of the estate of the bankrupt. The logical and inevitable conclusion from these considerations appears to me to be that, when the validity and extent of a petitioning creditor's claim is determined in the litigation upon the petition which results in the adjudication of bankruptcy, the bankrupt and those creditors, and those only who either voluntarily or involuntarily become parties to that litigation, are estopped by the determination there of the petitioner's claim, while all other creditors and the trustee who represents them, when the petitioning creditor's claim to share in the estate is subsequently presented to the referee or the court for allowance, are free to contest it upon its merits as it stood at the time of the filing of the petition in bankruptcy, regardless of the subsequent adjudication.

Nor is this conclusion without authority to support it. The only direct decision upon the question sustains it. That is the decision of Judge De Haven in In re Henry Ulfelder Clothing Co. (D. C.) 98 Fed. 409, cited by the majority. There is an obiter dictum in the

opinion in that case, which will be subsequently considered, to the effect that the bankrupt is the representative of all the creditors in a litigation upon a petition for an adjudication in bankruptcy, and that the determination of any material issue between the petitioning creditor and the bankrupt in that litigation estops all the creditors, whether they are parties to the proceeding or not. The decision in the case, however, repudiates this novel theory, and sustains the position that the determination of the validity and extent of claims in such a proceeding binds only those creditors who are in their own persons parties to the litigation. The case was this: Donie Ulfelder filed a petition in bankruptcy against the Henry Ulfelder Clothing Company, a corporation, in which she alleged that the corporation owed her $2,000, that it was insolvent, and that it had committed an act of bankruptcy. The corporation and one of its creditors, Bernard Lowenstein, appeared and filed answers to this petition, in which they denied that the petitioner was a creditor of the corporation and that the corporation was insolvent. Upon the trial of these issues the petitioner introduced in evidence a promissory note of the corporation to her for $2,200, to prove that she was its creditor, and two other promissory notes of the corporation, one to Henry Ulfelder for $1,800 and one to A. Levy for $1,440, for the purpose of proving its insolvency. The corporation and Lowenstein introduced evidence which tended to show that the three notes were never executed by the corporation and were without consideration. The court found the issues for the petitioner, and adjudged the corporation a bankrupt. Thereafter the three claims were presented to the referee for allowance by Donie Ulfelder, Henry Ulfelder, and A. Levy respectively, and the bankrupt and Bernard Lowenstein objected to their allowance upon the same grounds which they had urged at the trial upon the petition in bankruptcy. Neither the trustee nor any other creditor made any objection. The court decided that the issue over the validity of the claim of the petitioner, Donie Ulfelder, was res adjudicata between these parties, because the bankrupt and Lowenstein were both parties to the suit on the petition and to the trial of that issue in that litigation and denied them permission to contest that claim upon its merits. But the court also decided that the issues over the validity of the claims of Henry Ulfelder and A. Levy were not res adjudicata even against the corporation and Lowenstein, notwithstanding the fact that they were material issues and had been carefully tried and determined in the litigation upon the petition, because neither Henry Ulfelder nor A. Levy were parties to that litigation. The court accordingly reversed the order of the referee and directed him to try these issues upon their merits, regardless of the adjudication in bankruptcy. In re Henry Ulfelder Clothing Co. (D. C.) 98 Fed. 409–411, 413, 414.

It is obvious that this decision was a direct repudiation of the proposition that the estoppel of the bankrupt was the estoppel of the creditors, because under that theory the estoppel of the bankrupt to contest the claims of Levy and Henry Ulfelder must have estopped them although they were not parties to the litigation.

The theory that after the filing of the petition the bankrupt is the representative of the creditors, and that his subsequent estoppel affects the rights of creditors in the property which he owned at the time the petition was filed, is fallacious, because the status of claims of creditors and the status of the property at the time of filing the petition, and at that time alone, fixes the rights of the parties, and because the power of disposition and application of the property at will, and hence the power to bind it and the creditors, its beneficial owners, is divested from the bankrupt by the law, and vested in the creditors and the court, when the petition in bankruptcy is filed. It is for this reason that the decision in Candee v. Lord, 2 N. Y. 269, 51 Am. Dec. 294, is neither controlling nor persuasive here. In that case Russell Lord, a debtor, confessed a judgment in August, 1843, for $1,400 in favor of Henry Lord, and a second judgment, during the same month, for $1,250 in favor of Champlin. On March 29, 1844, Candee recovered a judgment against Russell Lord for $1,142.90. He brought a suit upon this judgment to avoid the prior judgments for fraud, and Henry Lord and Champlin answered that his judgment was founded upon a forged note. The court rightly held that in the absence of fraud they were bound by the judgment against their debtor, because at the time it was rendered he had the right and the power to sell, to dispose of, to charge with liens, and to apply his property to the payment of his debts as he chose, so that any deed, assurance, or judgment of their debtor estopped his creditors as well as himself. In the case at bar the bankrupt, Gentle, was deprived of this right and power of disposition 25 days before the estoppel by the adjudication in bankruptcy arose, and for that reason his deeds, assurances, and estoppels after the filing of the petition in bankruptcy bound neither his creditors nor the property, which had vested in the court in trust for the creditors when the petition was first deposited. The condition of this property and of the parties after the filing of the petition will more clearly appear by a brief consideration of the effect of that filing upon the rights of the bankrupt and of the creditors.

The status of claims at the time of the filing of the petition in bankruptcy, and not at any subsequent time, fixes the rights of their owners to share in the distribution of the estate of the bankrupt. Bankr. Act July 1, 1898, c. 541, § 63a (1) 30 Stat. 562 [U. S. Comp. St. 1901, p. 3447]; Swarts v. Siegel, 117 Fed. 13, 15, 54 C. C. A. 399, 401; In re Bingham (D. C.) 94 Fed. 796. The filing of a petition upon which a subsequent adjudication of bankrupcty is rendered places all the property of the bankrupt "which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him" in custodia legis. Section 70a (5) 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]. From that hour the bankrupt is divested of the power to appropriate it to the payment of his debts or to use and dispose of it at will, and that authority is vested in the District Court. Every suit against him upon a provable claim is stayed from the date of the filing of the petition. Section 11a, 30 Stat. 549 [U. S. Comp. St. 1901, p. 3426]. Every person is forbidden to

receive from the bankrupt any material amount of property after that date with intent to defeat the act. Section 29b, 30 Stat. 554 [U. S. Comp. St. 1901, p. 3433]. Every intentional preference after that date is voidable. Section 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]. Upon the filing of the petition the court may take immediate possession of the property if the bankrupt is neglecting it so that it is deteriorating in value. Section 69a, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]. And upon the appointment of the trustee all the property of the bankrupt which, prior to the filing of the petition, he could have transferred, or which could have been seized or sold under judicial process against him, passes to this officer of the court. Section 70a (5). Indeed, the condition at the time of the filing of the petition measures the extent of the estate and the rights of all creditors of the bankrupt and all parties interested in the property throughout all the provisions of the law. Sections 1 (10), 3b, 9b, 29b (4), 63a (1), 30 Stat. 544, 546, 549, 554, 562 [U. S. Comp. St. 1901, pp. 3419, 3422, 3426, 3447].

The difference between the judgment under consideration in Candee v. Lord and the judgment in the case at bar is the difference between a judgment against a debtor while he holds the title and the unlimited power of disposition of his property and a judgment against him after he has parted with the title and the power. The former binds his creditors, who must work out their rights to the property through their debtor; the latter has no effect upon any rights of creditors or any interests in the property, because the power of disposition had passed from the debtor before it was rendered. When the petition in bankruptcy was filed, Gentle was divested of all power to dispose of or to apply the property which he then owned in any other way than to the payment of the claims of the creditors as they stood at that time in the proportions prescribed by the act. What the bankrupt has when the petition in bankruptcy is filed is thenceforth the property of the creditors, in the custody of the court for their benefit. What he thereafter acquires, and that alone, is the property of the bankrupt, subject to his action and disposition. Hence estoppels of the bankrupt which arise after the filing of the petition may bind rights and interests in the latter, but they may not deprive the creditors of their rights in the former which are fixed at the time of the filing of the petition.

Any other conclusion is almost certain to lead to the destruction of the rights of creditors without notice or hearing, to palpable wrong and injustice. If, after the filing of a petition in bankruptcy, the bankrupt is still the representative of his creditors, and an estoppel which subsequently arises against him binds them, how completely are they at his mercy! The estoppel of a bankrupt upon every material issue relative to the validity and extent of claims which is involved in the adjudication in bankruptcy is as conclusive as it is upon any of these issues. In such a proceeding the issue of insolvency is frequently material, and its determination sometimes involves the validity and extent of the claim of every creditor. In such a case, if the estoppel of the bankrupt estops the creditors, the adjudication might determine the claims of all the creditors

without notice to, or the hearing of, any of them but the petitioning creditors.

The estoppel of a judgment by default is as conclusive upon every issue whose determination is requisite to the adjudication as the estoppel of a judgment after answer and trial. Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 683, 692, 15 Sup. Ct. 733, 39 L. Ed. 859; Board v. Platt, 25 C. C. A. 87, 92, 79 Fed. 567, 572; Geer v. Board, 38 C. C. A. 250, 256, 97 Fed. 435, 440. Under this theory 1 creditor, if the whole number is less than 12, and 3 if it is more, may by ex parte averments and proof and the mere silence of the bankrupt estop every other creditor, not only from contesting the claims of the petitioners, but from questioning the averments of the petition relative to his own.

An adjudication is only an estoppel, and if an estoppel of the bankrupt by an adjudication estops all of his creditors, by the same mark an estoppel of the bankrupt by deed, by confession, or by act must have a like effect. And his admission or confession by deed or act of the existence and validity of a claim after the filing of the petition must estop all other creditors to deny it as completely as it would bind the bankrupt himself. This proposition has been presented to this court before. In Watson v. Merrill, Trustee, 136 Fed. 359 (decided at the last term), the petition was filed February 6, 1903. Brown, the bankrupt, had leased a building of one Watson on a long term, and was obligated to pay him $6,900 in monthly installments. The adjudication in bankruptcy was made on April 2, 1903. On March 2, 1903, Brown made a written agreement with Watson whereby he surrendered the building and acknowledged himself indebted to Watson in the sum of $2,300 on the lease. After the adjudication, Watson proved his claim for this $2,300 and the written agreement. But the written confession of the bankrupt was unavailing to estop the other creditors or to sustain the claim, and it was disallowed.

The logical and necessary results of the theory that creditors of the bankrupt are bound by estoppels against him which arise after the filing of the petition are so far-reaching, so fraught with danger to rights of creditors and of property, so inconsistent with the express provisions of the bankruptcy act, and so violative of the familiar and indispensable rule that suits and judgments estop only those who either voluntarily become or are involuntarily made parties to them, that it fails to commend itself to my reason or judgment. In my opinion, it disregards the law and the facts which condition and govern all the rights of the parties, the facts that upon the filing of the petition in bankruptcy the property of the bankrupt becomes the property of his creditors and passes into the custody of the court for their benefit, that from that hour the bankrupt is divested of the power either by deed or act, by admission or by estoppel, to apply it to the payment of the claim of any creditor in preference to those of others, to dispose of it in any other way than as provided by the bankruptcy act, to deprive any creditor of the right granted to him by that law to contest upon its merits the claim of any other creditor to share in the estate at the place,

at the time, and before the tribunal specifically designated to determine that issue, and to do any other act to prevent the distribution of the estate among the creditors in the way prescribed by the law.

The case of In re Fallon, Fed. Cas. No. 4,628, cited in the opinion of the court, contains nothing inconsistent with this view. It neither involved nor touched upon the question in this case. It arose out of a motion by a judgment creditor for a vacation of the stay of execution upon his judgment pending proceedings in bankruptcy. The court denied the motion, and rightly decided that an inquiry into the debt of the petitioner in bankruptcy was not permissible upon a motion of that nature.

No question of the validity of the judgment of bankruptcy is presented in this case, nor of the sufficiency of the evidence of the claim of the petitioners to sustain that adjudication. The only issue is whether or not that adjudication estopped the objecting creditors and the trustee from contesting the existence of that claim and the right of the petitioning creditors to share in the distribution of the estate when they subsequently presented their claim for allowance. The objecting creditors were not parties to the litigation which resulted in that adjudication. The law gave them the option to appear therein and be bound or to refuse to appear and be exempt from the determination of the issues relative to the claims of creditors therein, and they chose to decline to appear and to be free from it. The bankruptcy act prescribed a time, a place, and a tribunal, and thereby excluded other times, places, and tribunals, and relieved all creditors from the necessity of appearing therein, where all claims to share in the estate must be presented and allowed, and it gave to every creditor the right then and there to contest the claim of every other creditor, without any exception of the petitioning creditors. The property of the bankrupt at the time of filing the petition became the property of his creditors, and passed into the custody of the court at that time, so that his subsequent acts and estoppels were not the acts and estoppels of his creditors and did not bind them. The status of their claims at the time of the filing of the petition measured their rights to share in the distribution of the estate, and subsequent estoppels of the bankrupt by acts, confessions, or judgments could not change that status or estop the trustee or other creditors from proving it.

For these reasons, the objecting creditors and the trustee were not, in my opinion, estopped by the adjudication in bankruptcy from contesting the allowance of the claim of the petitioning creditors and proving its true status upon the day on which the petition in bankruptcy was filed, and the judgment of the District Court to that effect ought to be reversed.